UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:14-cv-00085-MOC

| | | |
|---|---|---|
| **TADD R. BLACKWELL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court upon plaintiff's Motion for Summary

Judgment and the Commissioner's Motion for Summary Judgment. Having carefully

considered such motions and reviewed the pleadings, the court enters the following

findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I.    Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance

Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter,

plaintiff requested and was granted a hearing before an administrative law judge ("ALJ").

After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff,

from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was

denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's

decision the final decision of the Commissioner of Social Security ("Commissioner").

Important to consideration here, plaintiff submitted additional evidence to the Appeals

Council, to wit, additional opinions from his treating physician, Dr. Armstrong, which he contends "clarified" the opinions of Dr. Armstrong that were considered by the ALJ. After considering such evidence, the Appeals Council determined that "this information does not provide a basis for changing the Administrative Law Judge's decision." A.R. at 2. Thereafter, plaintiff timely filed this action.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.     Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV.    Substantial Evidence

### A.    Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read

the decision of the ALJ, and reviewed the extensive exhibits contained in the

administrative record.  The issue is not whether a court might have reached a different

conclusion had he been presented with the same testimony and evidentiary materials, but

whether the decision of the administrative law judge is supported by substantial evidence.

The undersigned finds that it is.

### B.    Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner

in determining whether a Social Security claimant is disabled.   The Commissioner

evaluates a disability claim under Title II pursuant to the following five-step analysis:

a.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.    An individual who does not have a "severe impairment" will not be found to be disabled;

c.    If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.    If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.      If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the Fifth Step of the sequential evaluation process.

## C.    The Administrative Decision

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date, which was December 15, 2004. A.R. at 28. At step two, the ALJ found that plaintiff had the severe impairments of: head injury with residual cognitive and memory deficits and mood swings; seizure disorder; tremor secondary to head injury; vision disorder; mild degenerative disease; and adjustment disorder. A.R. at 28. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings, including listings 1.02 and 1.04 (musculoskeletal disorders) and 12.04. A.R. at 28-29. The ALJ then determined that with his impairments, plaintiff had the RFC to perform medium work with the following additional functional limitations: operate push or pull controls with upper extremities, bilaterally, frequently; no climbing of ladders, ropes, or scaffolds; frequent climbing of ramps or stairs; frequent balancing, kneeling, crawling, or stooping; handling objects (gross manipulation) is limited to frequently, bilaterally; fingering (fine manipulation or items no smaller than a paper clip) limited to frequently, bilaterally; must avoid concentrated exposure to excessive vibration; must avoid even moderate exposure to hazards (use of moving machinery, exposure to unprotected heights); is limited to

occupations not involving direct exposure to sunlight (does not include the normal exposure incurred in traveling to and from work); limited to occupations not involving working beneath bright, flashing lights (does not include normal exposure to neon lights in a working environment); cannot work around hot grills or cooking ranges; and cannot work in an environment that requires the specific ability to taste or smell (e.g. bakeries, coffee taster, wine taster). In addition, the work must be simple, routine, repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple, work-related decisions; and can involve few, if any, changes in the work place with such changes introduced gradually. A.R. at 29-30. At step four, the ALJ found that plaintiff was unable to perform past relevant work. A.R. at 33.

At step five, the ALJ determined that, in light of plaintiff's RFC, age, education, and work experience, and based on the testimony of the Vocational Expert ("VE"), plaintiff could perform jobs existing in significant numbers in the national economy, including representative jobs such as cleaner of offices and buildings; car cleaner; packager; and general laborer. A.R. at 33-34. On February 6, 2013, the ALJ issued his decision finding that plaintiff was not disabled. A.R. at 26-34.

After requesting review, the Appeals Council considered plaintiff's additional evidence and denied plaintiff's request for review as discussed above. A.R. at 2.

D.    Discussion

1.    Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error: (1) that remand is required because new evidence submitted to the Appeals Council fills an evidentiary gap and provided the Appeals Council with a basis to change the ALJ's decision; (2) that the ALJ did not properly assess plaintiff's credibility; and (3) that the ALJ insufficiently addressed plaintiff's mother's Third Party Function report. Plaintiff's assignments of error will be discussed *seriatim*.

## 2. First Assignment of Error: Evidentiary Gap

In support of this first assignment of error, plaintiff contends that the evidence from Dr. Armstrong that he submitted to the Appeals Council requires remand as it fills an "evidentiary gap" inasmuch as it clarifies the earlier opinions of Dr. Armstrong which the ALJ rejected.

The Appeals Council is required by 20, Code of Federal Regulation, Part 404.970, to review certain decisions of an ALJ. In pertinent part, the regulation provides:

> [i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970. In Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93 (4th Cir. 1991), the appellate court held that evidence is new if it "is not duplicative or cumulative," and is material "if there is a reasonable possibility that the new evidence

would have changed the outcome." Id. at 96. See also Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).

More recently, the appellate court held in Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011) that even though the regulations do not require the Appeals Council to make *findings* when it rejects new and material evidence, "[i]n view of the weight afforded the opinion of a treating physician … analysis from the Appeals Council or remand to the ALJ for such analysis would be particularly helpful when the new evidence constitutes the only record evidence as to the opinion of the treating physician." Here, the new opinions of Dr. Armstrong are not the "only record evidence" as to Dr. Armstrong's opinion as the ALJ had before him the first-round opinions of Dr. Armstrong. While plaintiff argues that Dr. Armstrong's second opinion "clarifies" his earlier decision, the court agrees with the Commissioner that such opinions are inapposite to his earlier opinions considered by the ALJ. Clearly, the ALJ discussed at length the deficiencies in Dr. Armstrong's opinion and the second-round opinions submitted to the Appeals Council as "new evidence" merely attempted to address those concerns.

Specifically, plaintiff submitted to the Appeals Council a March 13, 2013, letter from Dr. Armstrong and a "Seizures RFC Questionnaire for the Period Prior to 12/31/2009." Dr. Armstrong completed that questionnaire in March 2013. A.R. 420-37. Plaintiff argues that such evidence should have caused the Appeals Council to remand the decision to the ALJ for consideration of that evidence and that the ALJ's consideration of Dr. Armstrong's September 23, 2011, opinion was also flawed.

First, the court cannot find that Dr. Armstrong's 2013 opinion "clarifies" his 2011 opinion. While this court's role is not to weigh the evidence on review, it does have an obligation to determine whether such evidence could conceivably fill an evidentiary gap as plaintiff suggests. Such later opinion could not fill an evidentiary gap as it is not supported by Dr. Armstrong's own relevant clinical findings or notes. Such consideration leads to consideration of plaintiff's sub-contention that the ALJ improperly weighed Dr. Armstrong's 2011 opinion.

Plaintiff contends, essentially, that the ALJ improperly discredited the opinion of plaintiff's treating physician, Dr. Armstrong, who concluded that plaintiff was disabled. The court finds that substantial evidence supports such determination by the ALJ. For example, Dr. Armstrong opined in his 2011 opinion that plaintiff experiences seizures "a few times a year." A.R. at 404. However, the record evidence indicated that plaintiff had just two seizures in 2006 and one seizure in mid-March 2007 and that after 2007, plaintiff was seizure-free. A.R. at 282, 324, and 341. Second, the court finds that substantial evidence supports the ALJ's decision to discredited Dr. Armstrong's 2011 conclusion that plaintiff's seizure medications "can cause some additional cognitive slowing." A.R. at 405. Indeed, Dr. Armstrong's only clinical findings and progress notes clearly indicate that plaintiff experienced no side effects from his regimen of medications. See A.R. at 301, 304, 307, 310, 314, 319, 322, 329, 341, 344, and 346. Third, the ALJ's finding that Dr. Armstrong's opinion was in conflict with other evidence in the record, A.R. at 32, finds substantial support as the record contains Dr. Pardoll's clinically *supported*

conclusion that plaintiff's head injury did not impact his ability to function on a daily basis, A.R. 334-339, and Dr. Hill's finding of a clinically *supported* full scale IQ of 111 (indicating plaintiff had high average cognitive functioning). A.R. at 416, 417, and 420.

In his 2013 opinion, Dr. Armstrong again concludes that plaintiff's head injury and the potential side effects of his seizure medications cause plaintiff to be disabled. A.R. at 420. He then states that such conclusion is based on "witnessed signs and symptoms of cognitive compromise" id.; however, Dr. Armstrong does not go on to state what those signs and symptoms were and, as mentioned above, his clinical notes provide absolutely no support for such conclusion. Dr. Armstrong further concludes that plaintiff's subjective complaints of "mood swings, short term memory loss, impaired concentration, and easy frustration" would make plaintiff incapable of working at even a low stress occupation. Id. Again, such 2013 finds no support in Dr. Armstrong's clinical notes. With the exception of what appears to be a now correct recitation of plaintiff's seizure history, the 2013 Seizures RFC completed by Dr. Armstrong suffers equally from a lack of support by contemporaneously documented clinical findings.

The court concludes that the ALJ properly considered Dr. Armstrong's first-round opinion, properly explained why he did not give such treating physician opinion greater weight, and that substantial evidence supports that determination. Further, the court concludes that the second-round opinion would not fill any "evidentiary gap" and that it would not be useful to remand this matter for consideration of that evidence by an ALJ as it appears that Dr. Armstrong's second-round opinion suffers from the same inadequacies

that his original conclusion suffered. Thus, the Appeals Council properly declined to accept review based on the submission of such evidence and the court can find no basis for a remand under Meyer. Equally, the opinion of a treating physician, who has observed the plaintiff's condition over a prolonged period of time, Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983), is only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). Therefore, the ALJ properly discredited Dr. Armstrong's 2011 opinion as it was inconsistent with not only other substantial medical evidence of record, it was unsupported by his own clinical findings.

### 3. Second Assignment of Error: Plaintiff's Credibility

Plaintiff next contend that the ALJ did not properly assess plaintiff's credibility. In Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> [i]t is well settled that: "the ALJ is required to make credibility determinations -- and therefore sometimes make negative determinations -- about allegations of pain or other nonexertional disabilities.... But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id. (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)).

The court finds that the ALJ properly assessed plaintiff's credibility.

Review of the ALJ's decision and the record reveals that the ALJ fully considered plaintiff's daily activities and noted that plaintiff lived independently, cared for his son every other weekend, and continued to look for medium level work. A.R. at 30. Further, the ALJ took into consideration all of plaintiff's limitations and impairments in determining RFC, id., all of which were inconsistent with plaintiff's testimony of inability to work. Specifically, the ALJ found as follows:

> [t]he claimant testified he could no longer engage in work activity due to frequent seizure activity following an accident in December 2004. He testified he could no longer perform postural movements or work in environments noted in the assigned RFC. He further testified he could not drive, smell, or taste and experienced significant memory problems from adjustment disorder. However, he admitted he lived independently, cared for his son every other weekend, and continued to seek medium exertional level work. Kay Blackwell testified the claimant frequently cried and was disrespectful but had not experienced recent seizure activity due to medications. In addition, she testified the claimant drove an automobile.
>
> Although the claimant has described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of ce11ainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's subjective report as to substantially limited daily activities is outweighed by the objective medical evidence.

A.R. at 30-31. In considering an almost identical method of evaluating pain in Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994), the late K. K. Hall, Circuit Judge, in announcing and concurring in the judgment of the Court of Appeals for the Fourth Circuit, held:

This refreshing mode of analysis is precisely what I believe our cases have been striving for. The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.

Id., at 927. Thus, the ALJ properly considered plaintiff's testimony concerning disabling symptoms and, just as importantly, fully explained his decision to not fully credit that testimony. The ALJ's error in discussing whether or not plaintiff drove a car and that his daily activities were not "objectively verifiable" is harmless error as it appears that his credibility determination is supported by other substantial evidence of record.

### 4. Third Assignment of Error: Consideration of the Opinion of Plaintiff's Mother

Finally, plaintiff contends that the ALJ failed to discuss his mother's testimony and her Third Party Function Report, both of which were supportive of his claim that he had trouble with concentration and failed to properly give consideration to his memory issues. Review of the ALJ's opinion reveals that he did not discuss plaintiff's mother's testimony; however, review of the portion of the decision discussing plaintiff's RFC reveals that the ALJ included mental limitations that are supported by substantial evidence of record.

Generally, failure by the Commissioner to consider an entire line of evidence falls well below the minimal level of articulation required by the Social Security Act. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). However, an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill.1991). The

issue of whether it is reversible error for an ALJ to fail to mention corroborative lay

witness opinions has been squarely addressed by a number of circuits, as discussed by the

district court in <u>Orcutt v. Barnhart</u>, WL 2387702, *8 -9 (C.D.Cal. 2005):

> As long as substantial evidence supports the ALJ's conclusion and the ALJ explains why "significant probative evidence has been rejected," an ALJ's failure to discuss lay witness testimony constitutes harmless error. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984). In *Vincent*, although the ALJ did not discuss the plaintiff's son's testimony in his hearing decision, the court held that such an omission did not require reversal because the medical evidence supported the ALJ's decision that the plaintiff was not disabled. *Id.*
> The view that an ALJ need not discuss every piece of evidence, even when that evidence is from a lay witness, has found support in the Seventh and Eighth Circuits, especially when lay witness testimony does little more than corroborate a plaintiff's own testimony. In *Books v. Chater*, a Seventh Circuit decision, the court held that "[a]ll we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that [he] considered the important evidence ⋯ [and to enable] us to trace the path of the ALJ's reasoning." ' *Books v. Chater*, 91 F.3d 972, 980 (7th Cir.1996) (*quoting Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir.1993) (*quoting Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985)). Since plaintiff's brother's testimony in *Books* "did not constitute a separate 'line of evidence," ' but "served strictly to reiterate, and thereby corroborate, [plaintiff's] own testimony concerning his activities and limitations"-and the plaintiff's testimony was found by the ALJ to be "untenable" when contrasted with his daily activities and the medical evidence-the court held that the ALJ's failure to specifically discuss the plaintiff's brother's testimony was not error. *Books*, 91 F.3d at 980. Similarly, in *Young v. Apfel*, the Eighth Circuit held that "[a]lthough specific articulation of credibility findings is preferable, we consider the lack thereof to constitute a deficiency in opinion-writing that does not require reversal" as long as the ALJ's "ultimate finding is supported by substantial evidence in the record." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir.2000). In *Young*, since the same evidence the ALJ used to discount the plaintiff's testimony "also support[ed] discounting the testimony of [the plaintiff's] husband," the court held that "the ALJ's failure to give specific reasons for disregarding [the husband's] testimony [was] inconsequential." *Id.*

Id., at 8-9. While an opinion of a district court in the Ninth Circuit is not controlling in

the Fourth Circuit, the court finds the reasoning of the Orcutt court to be highly

persuasive.

Under 20 C.F.R. § 404.1513(d), a plaintiff is permitted to submit evidence from

"other sources":

> In addition to evidence from the acceptable medical sources listed in
> paragraph (a) of this section, we may also use evidence from other sources
> to show the severity of your impairment(s) and how it affects your ability to
> work. Other sources include, but are not limited to--
> (1)    Medical sources not listed in paragraph (a) of this section (for
>        example, nurse-practitioners, physicians' assistants, naturopaths,
>        chiropractors, audiologists, and therapists);
> (2)    Educational personnel (for example, school teachers, counselors,
>        early intervention team members, developmental center workers, and
>        daycare center workers);
> (3)    Public and private social welfare agency personnel; and
> (4)    Other non-medical sources (for example, spouses, parents and other
>        caregivers, siblings, other relatives, friends, neighbors, and clergy).

Id. In Morgan v. Barnhart, 2005 WL 1870019 (4th Cir. 2005), the Court of Appeals for

the Fourth Circuit addressed what consideration an ALJ must give to corroborative lay

opinions submitted in accordance with Part 404.1513(d). There, the appellate court,

while not reaching the issue, agreed that an ALJ could not simply discredit lay evidence

based on inherent familial bias; instead, the appellate court found that the ALJ, implicitly

and properly, discredited such lay opinions as not consistent with the medical record and

the functional capacity evaluation. Id. at *7. As in Orcutt, the issue is not whether the

ALJ failed to mention a particular piece of evidence in his decision, but whether the

ALJ's final decision denying benefits is supported by substantial evidence contained in

the Administrative Record.  Here, the ALJ's ultimate findings concerning plaintiff's deficits concerning concentration and memory find support in substantial evidence of record.

### E.    Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error.  Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence.  See Richardson v. Perales, supra; Hays v. Sullivan, supra.  Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that the

(1)    decision of the Commissioner, denying the relief sought by plaintiff, is
       **AFFIRMED**;

(2)    plaintiff's Motion for Summary Judgment (#10) is **DENIED**;

(3)    Commissioner's Motion for Summary Judgment (#12) is **GRANTED**; and

(4)    this action is **DISMISSED**.


Signed: December 22, 2014

Max O. Cogburn Jr.
United States District Judge